Debra I. Grassgreen (CA Bar No. 169978)
John D. Fiero (CA Bar No. 136557)
Cia H. Mackle (admitted pro hac vice)
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010
E-mail: dgrassgreen@pszjlaw.com
jfiero@pszjlaw.com
cmackle@pszjlaw.com

Counsel for the Plaintiffs,
The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., a California corporation;<br>PROFESSIONAL INVESTORS SECURITY FUND, INC., a California corporation,<br><br>Debtors. | Case No. 20-30604<br><br>(Jointly Administered with Case No. 20-30579)<br><br>Chapter 11 |

| | |
|---|---|
| The Official Committee of Unsecured Creditors, | Adv. Pro. No. 21-_____ |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| Professional Financial Investors, Inc.; Professional Investors Security Fund, Inc.; Professional Investors Security Fund I, A California Limited Partnership; Professional Investors Security Fund IV, A California Limited Partnership; Professional Investors Security Fund VII, A California Limited Partnership; Professional Investors Security Fund IX, A California Limited Partnership; Professional Investors Security Fund XII, A California Limited Partnership; Professional Investors Security Fund XIII, A California Limited Partnership; Professional Investors Security Fund XIV, A California Limited Partnership; Professional Investors Security Fund XV, A California Limited Partnership; Professional Investors Security Fund XVII, A California Limited Partnership; Professional Investors Security Fund XVIII, A California Limited Partnership; Professional Investors 20, LLC; Professional Investors 21, LLC; Professional Investors 22, LLC; Professional Investors 23, LLC; Professional Investors 24, LLC; Professional Investors 25, LLC; Professional Investors 26, LLC; Professional Investors 27, LLC; Professional Investors 28, LLC; Professional Investors 29, LLC; Professional Investors 30, LLC; Professional Investors 31, LLC; Professional Investors 32, LLC; Professional Investors 33, LLC; Professional Investors 34, LLC; Professional Investors 35, LLC; Professional Investors 36, LLC; Professional Investors 37, LLC; Professional Investors 38, LLC; Professional Investors 39, LLC; Professional Investors 40, LLC; Professional Investors 41, LLC; Professional Investors 42, LLC; Professional Investors 43, LLC; Professional Investors 44, LLC; Professional Investors 45, LLC; Professional Investors 46, LLC; Professional Investors 47, LLC; Professional Investors 48, LLC; Professional Investors 49, LLC; and PFI Glenwood, LLC<br>Defendants. | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

As and for its complaint, plaintiff the Official Committee of Unsecured Creditors of Professional Financial Investors, Inc. and Professional Investors Security Fund, Inc. (the "Committee" or "Plaintiff") alleges as follows:

## I.

## JURISDICTION AND VENUE

1. The above-captioned court (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 147(a) and 1334(a). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

2. Every defendant in this adversary proceeding is a chapter 11 debtor in this district or an affiliate of a chapter 11 debtor in this district. Accordingly, venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a).

3. This adversary proceeding is commenced pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), sections 105, 363 and 541 of Title 11 of the United States Code (the "Bankruptcy Code") and 28 U.S.C. § 2201.

## II.

## THE PARTIES

4. The Committee was appointed by the Office of the United States Trustee in the above-captioned case on August 19, 2020 (Docket No. 59). The members of the Committee are all investors in investment vehicles and debt instruments sponsored by one or more of the defendants named herein.

5. Defendant Professional Financial Investors, Inc. ("PFI") is a corporation organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PFI is a debtor in Court case number 20-30604.

6. Defendant Professional Investors Security Fund, Inc. ("PISF") is a corporation organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PISF is a debtor in Court case number 20-30578.

7. Defendant Professional Investors Security Fund I ("PISF I") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PISF I is a debtor in Court case number 20-30908.

8. Defendant Professional Investors Security Fund, IV ("PISF IV") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PISF is a debtor in Court case number 20-30909.

9. Defendant Professional Investors Security Fund VII ("PISFVII") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PSIFVII is a debtor in Court case number 20-30911.

10. Defendant Professional Investors Security Fund IX ("PISFIX") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PSIFIX is a debtor in Court case number 20-30910.

11. Defendant Professional Investors Security Fund XII ("PISFXII") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PSIFXII is a debtor in Court case number 20-30912.

12. Defendant Professional Investors Security Fund XIII ("PISFXIII") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PSIFXIII is a debtor in Court case number 20-30913.

13. Defendant Professional Investors Security Fund XIV ("PISFXIV") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PSIFXIV is a debtor in Court case number 20-30914.

14. Defendant Professional Investors Security Fund XV ("PISFXV") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PSIFXV is a debtor in Court case number 20-30915.

15. Defendant Professional Investors Security Fund XVII ("PISFXVII") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PSIFXVII is a debtor in Court case number 20-30916.

16. Defendant Professional Investors Security Fund XVIII ("PISFXVIII") is a limited partnership organized and existing under the laws of the State of California with its principal place of business in Marin County, California. PSIFXVIII is a debtor in Court case number 20-30917.

17. Defendant Professional Investors 20, LLC ("PI20") is a limited liability company with its principal place of business in Marin County, California. PI20 is a debtor in Court case number 20-30919.

18. Defendant Professional Investors 21, LLC ("PI21") is a limited liability company with its principal place of business in Marin County, California. PI21 is a debtor in Court case number 20-30920.

19. Defendant Professional Investors 22, LLC ("PI22") is a limited liability company with its principal place of business in Marin County, California. PI22 is a debtor in Court case number 20-30922.

20. Defendant Professional Investors 23, LLC ("PI23") is a limited liability company with its principal place of business in Marin County, California. PI23 is a debtor in Court case number 20-30923.

21. Defendant Professional Investors 24, LLC ("PI24") is a limited liability company with its principal place of business in Marin County, California. PI24 is a debtor in Court case number 20-30924.

22. Defendant Professional Investors 25, LLC ("PI25") is a limited liability company with its principal place of business in Marin County, California. PI25 is a debtor in Court case number 20-30925.

23. Defendant Professional Investors 26, LLC ("PI26") is a limited liability company with its principal place of business in Marin County, California. PI26 is a debtor in Court case number 20-30927.

24. Defendant Professional Investors 27, LLC ("PI27") is a limited liability company with its principal place of business in Marin County, California. PI27 is a debtor in Court case number 20-30928.

DOCS_SF:104994.7 70041/002

25. Defendant Professional Investors 28, LLC ("PI28") is a limited liability company with its principal place of business in Marin County, California.

26. Defendant Professional Investors 29, LLC ("PI29") is a limited liability company with its principal place of business in Marin County, California. PI29 is a debtor in Court case number 20-30929.

27. Defendant Professional Investors 30, LLC ("PI30") is a limited liability company with its principal place of business in Marin County, California. PI30 is a debtor in Court case number 20-30930.

28. Defendant Professional Investors 31, LLC ("PI31") is a limited liability company with its principal place of business in Marin County, California.

29. Defendant Professional Investors 32, LLC ("PI32") is a limited liability company with its principal place of business in Marin County, California. PI32 is a debtor in Court case number 20-30934.

30. Defendant Professional Investors 33, LLC ("PI33") is a limited liability company with its principal place of business in Marin County, California. PI33 is a debtor in Court case number 20-30935.

31. Defendant Professional Investors 34, LLC ("PI34") is a limited liability company with its principal place of business in Marin County, California. PI34 is a debtor in Court case number 20-30936.

32. Defendant Professional Investors 35, LLC ("PI35") is a limited liability company with its principal place of business in Marin County, California. PI35 is a debtor in Court case number 20-30937.

33. Defendant Professional Investors 36, LLC ("PI36") is a limited liability company with its principal place of business in Marin County, California. PI36 is a debtor in Court case number 20-30938.

34. Defendant Professional Investors 37, LLC ("PI37") is a limited liability company with its principal place of business in Marin County, California. PI37 is a debtor in Court case number 20-30939.

DOCS_SF:104994.7 70041/002

35. Defendant Professional Investors 38, LLC ("PI38") is a limited liability company with its principal place of business in Marin County, California.

36. Defendant Professional Investors 39, LLC ("PI39") is a limited liability company with its principal place of business in Marin County, California.

37. Defendant Professional Investors 40, LLC ("PI40") is a limited liability company with its principal place of business in Marin County, California. PI40 is a debtor in Court case number 20-30940.

38. Defendant Professional Investors 41, LLC ("PI41") is a limited liability company with its principal place of business in Marin County, California. PI41 is a debtor in Court case number 20-30941.

39. Defendant Professional Investors 42, LLC ("PI42") is a limited liability company with its principal place of business in Marin County, California.

40. Defendant Professional Investors 43, LLC ("PI43") is a limited liability company with its principal place of business in Marin County, California.

41. Defendant Professional Investors 44, LLC ("PI44") is a limited liability company with its principal place of business in Marin County, California.

42. Defendant Professional Investors 45, LLC ("PI45") is a limited liability company with its principal place of business in Marin County, California.

43. Defendant Professional Investors 46, LLC ("PI46") is a limited liability company with its principal place of business in Marin County, California. PI46 is a debtor in Court case number 20-30942.

44. Defendant Professional Investors 47, LLC ("PI47") is a limited liability company with its principal place of business in Marin County, California.

45. Defendant Professional Investors 48, LLC ("PI48") is a limited liability company with its principal place of business in Marin County, California.

46. Defendant Professional Investors 49, LLC ("PI49") is a limited liability company with its principal place of business in Marin County, California.

DOCS_SF:104994.7 70041/002

47. Defendant PFI Glenwood, LLC ("PFI Glenwood") is a limited liability company with its principal place of business in Marin County, California.

48. In this Complaint, PFI, PISF, PISF I, PISF IV, PISFVII, PISFIX, PISFXII, PISFIX, PISFXII, PISFXIII, PISFXIV, PISFXV, PISFXVII, PISFXVIII, PI20, PI21, PI22, PI23, PI24, PI25, PI26, PI27, PI28, PI29, PI30, PI31, PI32, PI33, PI34, PI35, PI36, PI37, PI38, PI39, PI40, PI41, PI42, PI43, PI44, PI45, PI46, PI47, PI48, PI49 and PFI Glenwood will be collectively referred to as the "Defendants."

## III.

## GENERAL ALLEGATIONS

## BACKGROUND

Defendants' Capital Structure

49. PFI was founded by Ken Casey ("Casey") on or about August 15, 1990. Casey served as its sole officer, director and shareholder until 1998, when he relinquished his corporate positions and placed his shares of PFI in an irrevocable trust after pleading guilty in federal court to one count of conspiracy to defraud the federal government, five counts of tax evasion, forty-one counts of bank fraud and five counts of filing false income tax returns. On information and belief, Casey was at that time sentenced to 18 months in prison and three years of probation. As a result of such prior fraud, Casey lost his standing as a Certified Public Accountant. Despite these actions, Plaintiff is informed and believes that Casey maintained complete de facto control over PFI until his death on May 6, 2020.

50. Casey founded PISF on or about November 1, 1983 and served as its sole shareholder, officer, and director from that date until his death.

51. The Defendants own various real properties in Northern California (Marin and Sonoma Counties) and also own interests in various other entities that in turn own real property in California. PFI serves as the property manager for all of these real properties as well as the operational arm that manages and accounts for Defendants' activities.

//

//

Defendants' Assets and Liabilities

52. Plaintiff is informed and believes, and on that basis alleges that the Debtors currently own a direct or indirect interest in approximately 71 properties in California. Plaintiff is further informed and believes that the 71 properties fall within the following direct or indirect ownership interest categories:

(a) <u>Limited Partnerships ("LPs")</u>. Between 1983 and 1995, Casey formed 18 LPs to acquire individual properties. In doing so, Casey obtained mortgage debt from banks and raised additional capital from investors to fund the LPs. The Debtors currently maintain 10 of these LPs (the other 8 were liquidated). The majority of the LP equity investors were bought out or, in more recent years, converted their interests into other forms of investments offered by the Debtors (*e.g.*, Deed of Trust holders, commonly referred to as "DOTs" and/or "DOT Holders").

(b) <u>PFI Owned Properties</u>. Between 2003 and 2019, PFI acquired 31 properties. The properties acquired were financed through traditional bank mortgage debt, funding from DOT Holders, and Tenancy in Common agreements (commonly referred to as "TICs" and/or "TIC Holders"). Current DOT Holders include investors who exchanged and/or transferred all or a portion of their prior investments into newly acquired properties.[1] These cashless Rollovers required the Debtors to source new cash equal to the designated transfer amounts in order to fund the acquisition of each subject property. The primary means by which the Debtors raised new money appears to have been through PISF Notes—the proceeds of which typically flowed through commingled PFI/PISF corporate accounts to the escrow accounts.

(c) <u>Limited Liability Companies ("LLCs")</u>. Between 2013 and 2020, Casey formed 30 LLCs to acquire individual properties. Although there were variations in percentages, the LLCs were generally structured in a manner that granted a 30% ownership interest to PFI. The properties acquired were generally financed through traditional

---

[1] The process by which investors moved and/or transferred their investments between investment types is hereinafter referred to as "Investment Rollovers" and/or "Rollovers."

bank mortgage debt, sale of membership interests in the LLCs, and TIC Holders. The funding of the LLC properties also included Investment Rollovers.

Defendant PFI serves as the property manager for all 71 LP, PFI Owned, and LLC properties in which it continues to hold a direct or indirect interest.

53. Plaintiff is informed and believes that most of the Real Properties are subject to a first lien deed of trust in favor of traditional third-party bank lender in many cases. In addition, some of the Real Properties were purported to be encumbered by deeds of trust in favor of investors in one of the Defendants (these purported deeds of trust are fractionalized deeds of trust). Plaintiff is informed and believes, and on that basis alleges, that as of July 2020, the aggregate outstanding debt secured by first and second lien deeds of trust totaled more than $400 million. In addition, Plaintiff is informed and believes that PISF owes more than $275 million of principal and estimated accrued and unpaid interest to investors whose investments were purportedly secured by PISF's interest in the LPs.

54. Plaintiff is informed and believes that the Defendants' books and records indicate they have five main types of investors: (a) lenders to PISF that are purportedly secured by PISF's interests in the LPs (collectively, the "PISF Straight Lenders"), (b) lenders to PISF that are purportedly secured by deeds of trust on real properties owned by the LPs (collectively, the "PISF DOT Lenders", (c) lenders to PFI that are purportedly secured by deeds of trust on real properties owned solely by PFI (collectively, the "PFI DOT Lenders," (d) members of various limited liability companies for which PFI is the manager, a member, an equity holder, and a property manager (collectively, the "LLC Members"), and (e) tenants in common to properties owned with PFI or the LLCs.

Fraud Example: Operations of PISF

55. Plaintiff is informed and believes that the initial discovery of financial irregularities after Casey's death related to the loans made by the PISF Straight Lenders, which appear to have a current total outstanding principal balance of approximately $237 million. However, additional review has made it clear that virtually every other PFI-related investment vehicle was also impacted. One element of Defendants' scheme involved having PISF Straight Lenders loan money

to PISF based upon assurances that their loaned funds would be used to make improvements to properties owned by PISF, pay off existing investors in PISF, purchase new real properties to be held by PISF, and to fund a reserve to cover PISF's debt service on investors' loans. While the loans made by PISF Straight Lenders are ostensibly secured by PISF's interests in the LPs, the investigation into the Companies' finances indicates this collateral is mostly exhausted and likely has been for some years. It is also unclear if any of these security interests were ever perfected. The properties owned by the LPs are subject to mortgages and deeds of trust that, based on current estimated values for those properties, leave little or no equity in the individual LPs.

56. Plaintiff is informed and believes that a substantial amount of the funds invested by the PISF Straight Lenders appear to have been used to (i) make interest payments to pre-existing PISF Straight Lenders, (ii) make interest payments to the PISF DOT Lenders, (iii) make interest payments to the PFI DOT Lenders, (iv) convert PISF Straight Lenders' principal and accrued interest into membership interests in PFI-managed limited liability companies, (v) fund intra-company transactions with PFI that were effectively booked as payables and receivables, (vi) make intra-company loans to LLCs for improvements and interest payments to members, and (vii) enrich Ken Casey and potentially others.

57. The finances of the Companies are such that, without accepting new investment or monies from PISF Straight Lenders, neither PISF nor PFI have sufficient cash flow to meet their monthly interest obligations to the existing PISF Straight Lenders or the PISF DOT Lenders, the PFI DOT Lenders, or pay promised quarterly returns to certain LLC members. This is just one example of the grand fraud perpetrated by the Debtors' prior managers and executives. Additionally, the Committee is informed and believes that investment monies from DOT Holders and LLC members were similarly allocated without regard to the investment promises made and undertaken by the Debtors such that the entire operation was a Ponzi scheme beginning no later than January 1, 2007.

Indictment of Lewis Wallach and His Admissions of Guilt

58. Lewis Wallach ("Wallach") is the former CEO of PFI. On September 29, 2020, Wallach was indicted in a criminal information in connection with his activities involving the

Defendants, and that information included one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. On December 16, 2020, Wallach presented a plea agreement to the Hon. Maxine M. Chesney, U.S. District Judge in which he pleaded guilty on both counts.

59. According to his plea agreement, Wallach admitted that he was hired by Casey and that he was later named president and CEO of PFI. Wallach admitted that PFI and PISF investors were told that the investors' regular interest and distribution payments would be paid from income on the residential and commercial properties owned and managed by PFI. In fact, as Wallach has now admitted, he knew that PFI was not profitable and that income from the properties was not sufficient to pay both interest and distributions. In fact, both Wallach and Casey knew that PFI and PISF had to raise new investments to pay existing investors.

60. Wallach admitted that he lied to investors, including falsely telling investors that PFI had significant reserves to allow it to survive and expand during the economic downturn caused by the COVID 19 pandemic. He admitted that he conspired with Casey to mislead investors and solicit investor funds using false statements.

61. Wallach also admitted that he engaged in a years-long scheme to embezzle funds from PFI and PISF in which he took more than $26 million from 2015 until June 2020, including money he used for large investments, the purchase of real estate, and payment of personal expenses.

62. Under the plea agreement entered by Wallach and the United States Attorney's Office, Wallach agreed to the entry of an order by the court requiring him to pay restitution of no less than $26.7 million. Pursuant to the agreement, Wallach also agreed to continue to cooperate in the criminal investigation and to assist prosecutors with identifying, securing, and transferring any assets derived from or related to the charged offense.

<u>Further Confirmation of the Defendants' Fraudulent Business Operations From FTI</u>

63. Plaintiff is informed and believes that, since at least January 1, 2007, Casey and Wallach operated a fraudulent scheme in which investors believed they were loaning funds to or investing in equity of the Defendants. However, in fact, a significant portion of those funds were used to service the debt owed to existing investors and to personally enrich Casey and Wallach.

64. The fraudulent scheme involving the Defendants only came to light upon Casey's death. Several months later, the vast majority of the Defendants entered bankruptcy (with only a tiny fraction of the entities not being debtors as this Complaint is being filed).

65. On September 3, 2020, the debtors then in bankruptcy retained FTI Consulting ("FTI") as their financial advisor. Since that time, an FTI forensics team has worked day and night to gather data, organize it, analyze it, and present its findings to the Debtors, the Committee, and others. Based on its communications with FTI, Plaintiff is informed and believes that FTI will offer the following expert opinions at any trial in this matter, among others:

- No later than January 1, 2007, the Defendants' business records and other available evidence presents attributes commonly seen in Ponzi schemes, and such attributes continued through Casey's death.
- Many Debtors had either negative equity or a disabling lack of liquidity that demanded the use of cash belonging to other related entities.
- The "debt service" and investment returns paid to investors could never have been paid without the use of new capital from new investors because the Real Properties were not sufficiently profitable to have done so.
- The Debtors' cash flows were commingled, and this commingling was a prevalent feature of Defendants' operations.
- Casey and Wallach removed millions of dollars from the Defendants.

## IV.

## CLAIMS FOR RELIEF

## FIRST CLAIM: DECLARATORY RELIEF AGAINST ALL DEFENDANTS

66. Plaintiff adopts and incorporates each of the allegations and contentions found in paragraphs 1-65, above, as if they were set forth here in full.

67. An actual controversy and dispute exists between Plaintiff and Defendants regarding the nature of the Defendants' liabilities to all investors. Plaintiff contends that all of Defendants' businesses were operated as a Ponzi scheme since at least January 1, 2007. Defendants are awaiting the outcome of a final forensic report from FTI to verify the foregoing.

DOCS_SF:104994.7 70041/002

68. A formal judicial Ponzi finding from this Court will benefit the Debtors because it will be integral to future "netting" and claims allowance in the bankruptcy cases. It will also be one of the cornerstones of future clawback actions against persons who got more out of the Ponzi scheme than they put in. Similarly, a formal judicial Ponzi finding will benefit all investors, as the finding will assist investors with their federal income tax filings.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. A declaration that the Defendants' businesses were all part of an overarching Ponzi scheme that began no later than January 1, 2007;

2. For costs of suit incurred herein; and

3. Such other and further relief as the Court may deem just and proper.

Dated: April 13, 2021

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ John D. Fiero*
Debra I. Grassgreen
John D. Fiero
Cia Mackle

Counsel for the Official
Committee of Unsecured Creditors